UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                Plaintiff,

          v.

THOMAS TERRELL LOFTON,

                Defendant.
_____

REPORT & RECOMMENDATION

04-CR-6063T

**PRELIMINARY STATEMENT**

        By Order of Hon. Michael A. Telesca, United States District Judge, dated April 14, 2004, all pre-trial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B).  (Docket # 5).

        Defendant Thomas Terrell Lofton (hereinafter "Lofton") is charged in a seven-count second superseding indictment.  The first count charges that between August 2002 and July 2003, Lofton conspired to violate the Hobbs Act by robbery and extortion of individuals engaged in narcotics distribution and possession, in violation of 18 U.S.C. § 1951(a).  The second count charges that between July 2002 and July 2003, Lofton used and carried firearms in connection with the alleged Hobbs Act conspiracy, in violation of 18 U.S.C. §§ 924(c)(1) and 2.  Counts Three and Five charge that on October 15, 2002, and March 11, 2003, respectively, Lofton attempted to violate the Hobbs Act by robbing individuals engaged in narcotics distribution and possession, in violation of 18 U.S.C. §§ 1951(a) and 2.  Counts Four and Six charge that on those same dates, respectively, Lofton used, carried – and, as to the offense

charged in Count Four, brandished, and, as to the offense charged in Count Six, discharged – a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and 2.  The final count of the superseding indictment charges that between July 2002 and July 2003, Lofton possessed three firearms after having been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and 2.  (Docket # 41).

Currently pending before this Court for a report and recommendation is Lofton's motion to suppress an identification of him made by a civilian witness.[1]  (Docket # 48).  A *Wade* hearing was held before this Court on April 5, 2005.  (Docket # 59).  Investigator Brian Tucker and Officers Cynthia Mull and Stacey Winter of the Rochester Police Department testified on behalf of the government.  No witnesses were called on behalf of the defense.  The following constitutes the report and recommendation of this Court.

## FACTUAL BACKGROUND

The testimony offered by Investigator Tucker and Officers Mull and Winter was consistent and overlapping in many respects.  Each officer provided additional testimony, however, describing their unique roles in the investigation of the events giving rise to the

---

[1] Lofton's omnibus motion also sought, *inter alia*, discovery pursuant to Rule 12 of the Federal Rules of Civil Procedure, clarification regarding the scope of the first count of the Second Superseding Indictment, a bill of particulars, dismissal or redaction of the first and third counts of the Second Superseding Indictment, *Brady* and *Jencks* materials, and rulings on evidentiary matters under Rules 404, 608 and 609 of the Federal Rules of Evidence.  (Docket ## 16, 48).  Each of these requests was either resolved by the parties or decided in open court by the undersigned on March 9, and April 13, 2005.  (Docket ## 51, 53).

2

challenged identification procedure. Based upon the credible testimony presented to this Court, I find the following facts.

On October 15, 2002, at approximately 11:57 p.m., a police radio broadcast was transmitted reporting an armed robbery at 141 Lapham Street involving a Rochester Gas and Electric ("RG&E") employee. (Tr. 3).[2] Investigator Tucker, Officer Mull and Officer Winter were three of the officers who responded to the call. Mull was the first to arrive at 141 Lapham Street and was met by a man and a woman standing in the street. The woman pointed in the direction of Lake Avenue and stated, "He went that way." (Tr. 21, 25). As Mull stopped her patrol car, she received a broadcast from another officer, Officer Snead, who requested assistance with two possible suspects he had located nearby on Lake Avenue, approximately one block from 141 Lapham Street. (Tr. 21-22). At that point, Mull informed the couple that she would return, and she responded to Snead's call. (Tr. 22).

Tucker and Winter also received the second broadcast from Snead and independently responded to the intersection of Redwood Road and Lake Avenue. (Tr. 3-4, 29). When Tucker arrived at the intersection, he observed two black males, later identified as the defendant, Thomas Lofton, and Walter Balkum, lying on the ground. Next to the two men were a .38 caliber handgun, an RG&E cap and a clipboard. (Tr. 3-4). By the time Officer Winter arrived, the suspects were in custody, and she proceeded to the area of 141 Lapham Street.

While the other officers were assisting Snead, Officer Mildred Witherspoon Ruffin arrived at 141 Lapham Street and initiated an investigation of the robbery. As Ruffin

---

[2] The transcript of the evidentiary hearing conducted before this Court on April 5, 2005, shall hereinafter be referenced as "Tr. __." (Docket # 59).

reported to Investigator Tucker, she learned that an individual named William Johnson had been present at 141 Lapham Street when an individual claiming to be a meter reader for RG&E approached the house and was allowed inside. Once inside, the RG&E imposter displayed a gun, demanded the "weed" that was in the house and forced Johnson into the basement. As he went into the basement, Johnson yelled out to his mother to call the police. (Tr. 5).

When Officer Winter arrived at 141 Lapham Street, she joined the investigation by searching for potential witnesses. As part of that effort, Winter approached the residence at 137 Lapham Street, which is directly adjacent to the residence at 141. Philip Barnes, the resident of 137 Lapham Street, reported to Winter that he had recently witnessed suspicious activity. Specifically, Barnes reported having observed a gold Honda drive past his house twice and having seen two men exit the car. (Tr. 29-30). He described one of the individuals as a black male, approximately six feet tall, wearing a black hoody, black pants and tan boots. (Tr. 31). After exiting the car, the two men walked towards 141 Lapham Street, one on the north side of the street, and one on the south side. (Tr. 31).

While Winter and Ruffin were conducting their investigation, Officer Mull remained at the intersection of Rosewood Road and Lake Avenue with the two suspects. Mull took Lofton into custody and placed him in the rear seat of her patrol car. (Tr. 22). She specifically recalled that Lofton was wearing dark pants and a black sweatshirt, which she believed was a hooded sweatshirt. (Tr. 27). A few minutes later, Tucker instructed her to drive Lofton to the area of 141 Lapham Street. Lofton was then transported to that area, as was Balkum in a separate vehicle.

Before the suspects arrived, Investigator Tucker reported to 141 Lapham Street and assumed control of the investigation. He received reports from Ruffin and Winter concerning the information provided by Johnson and Barnes and began to coordinate a show-up procedure involving the two suspects in custody. (Tr. 6). Tucker first spoke with Winter and asked her to accompany Barnes during the procedure. (Tr. 14). Shortly thereafter, Snead and Mull arrived in separate patrol cars – Snead transporting Balkum and Mull transporting Lofton. (Tr. 8-9). Tucker instructed Snead to remove Balkum from his car, have him walk to a nearby driveway, turn in a circle and then return to the car. Tucker instructed Mull to wait for Balkum to be placed back into the patrol car and then to repeat the procedure with Lofton. (Tr. 9). During this procedure, Johnson, the alleged victim, was seated in a nearby police car and Barnes, the neighbor, was standing on the front porch of his residence across the street, approximately thirty feet away. (Tr. 9-10, 35).

Before the show-up procedure commenced, Tucker approached the car in which Johnson was sitting and explained that the people shown may or may not have been involved in the incident, but that Johnson should "take a look at them" and indicate whether he recognized either one. (Tr. 9). The show-up procedure was then performed as directed by Tucker. The entire procedure lasted approximately thirty seconds and occurred within fifteen minutes of the alleged robbery. (Tr. 8, 24). According to Tucker, Johnson was able to identify Balkum, but indicated that he did not recognize Lofton. (Tr. 10).

As the show-up was being conducted, Winter remained at 137 Lapham Street with Barnes. According to Winter, she advised Barnes that "we had two people we wanted him to look at." (Tr. 33). As she and Barnes were on the front porch, two patrol cars arrived on the

5

scene and parked across the street from 137 Lapham Street. (Tr. 33-34). As Barnes watched, one of the suspects was removed from the lead vehicle. Barnes, however, was unable to see the suspect before he was returned to the car because an obstruction blocked his view. (Tr. 35). Immediately thereafter, Mull removed Lofton from the rear seat of the second patrol car. Before Lofton reached the driveway, Barnes stated, "Yep, that was the guy that got out of the gold Honda, that's him." (Tr. 36). According to Winter, no one else was present on the porch during the show-up and no one other than she spoke to Barnes about the identification procedure. (Tr. 33, 37).

## REPORT AND RECOMMENDATION

Lofton moves to suppress the identification of him by Barnes, arguing that the procedure was unduly suggestive. The government disagrees and opposes his motion.

As the Supreme Court has consistently affirmed, a defendant has the right not to be subjected to an identification procedure that creates a "very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)); *see also Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Moreover, due process requires the suppression of any pretrial identification procedure that is unduly suggestive and not otherwise independently reliable. *Manson v. Brathwaite*, 432 U.S. at 114 ("reliability is the linchpin in determining the admissibility of identification testimony").

In determining the admissibility of a pre-trial identification, the court must undertake a two-step analysis. First, the court must consider whether the identification procedure

was unnecessarily suggestive. If so, the court then must determine whether the identification nevertheless possessed "sufficient aspects of reliability." *United States v. Bubar*, 567 F.2d 192, 197 (2d Cir.), *cert. denied*, 434 U.S. 872 (1977) (citing *Manson v. Brathwaite*, 432 U.S. at 109-17). "Even if the procedure was unnecessarily (or impermissibly) suggestive, therefore, a district court may still admit the evidence 'if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.'" *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir.) (footnote omitted) (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.), *cert. denied*, 500 U.S. 919 (1991)), *cert. denied*, 513 U.S. 862 (1994).

Where, as here, the challenged identification procedure involves a prompt on-the-scene show-up, the Second Circuit has reasoned that such procedure, properly undertaken, is "'consistent with good police work' and does not offend the principles established in *United States v. Wade*." *United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir. 1972) (quoting *United States v. Sanchez*, 422 F.2d 1198, 1200 (2d Cir. 1970) (citations omitted). Indeed, it serves "to insure the immediate release of an innocent suspect and at the same time to enable the police to resume the search for the fleeing culprit while the trail is still fresh." *Id.*; *see United States v. Bautista*, 23 F.3d 726, 730 (2d Cir. 1994) (prompt show-up serves to prevent the mistaken arrest of innocent persons); *Mendoza v. McGinnis*, 2004 WL 736894, *6 (S.D.N.Y. 2004) ("show-up identifications that occur in temporal and geographic proximity to the crime have generally been found constitutionally permissible and not unduly suggestive") (collecting cases). Recognizing the importance of these law enforcement objectives, courts have frequently upheld on-the-scene show-ups conducted in temporal and geographic proximity to the alleged criminal conduct, reasoning that such procedures are not *unnecessarily* suggestive. *See*, *e.g.*,

*United States v. Bautista*, 23 F.3d at 730 (2d Cir. 1994) (presentation of suspects to a confidential informant immediately after a raid was not unnecessarily suggestive); *Jones v. Strack*, 1999 WL 983871, *11-12 (S.D.N.Y. 1999) (show-up of two armed robbery suspects conducted in park two blocks away was prudent police work and not unduly suggestive); *Boles v. Senkowski*, 878 F. Supp. 415, 422 (W.D.N.Y. 1995) (on-the-street identification by victim of armed robbery was not impermissibly suggestive); *United States v. Gonzalez*, 864 F. Supp 375, 386 (S.D.N.Y. 1994) (on-scene identification by off-duty police officer who had witnessed defendant's criminal conduct twenty minutes earlier was not unduly suggestive).

In this matter, Lofton and Balkum were apprehended and transported in separate patrol cars to the area of 141 Lapham Street within approximately fifteen minutes of the reported armed robbery. Each suspect was thereafter individually removed from the car, instructed to walk a short distance, turn around and then return to the car. The show-up procedure was witnessed by Johnson, the victim of the robbery, and Barnes, a neighbor who reported witnessing suspicious activity involving two males, one of whom was wearing clothing similar to those worn by Lofton. Of course, Barnes's identification is the only one at issue in this case because only he identified Lofton. According to Winter, Barnes was located on the front porch of his residence, approximately thirty-feet from the police car from which Lofton emerged. Almost immediately upon Lofton's removal from the car, Barnes apparently recognized him, exclaiming, "Yep, that was the guy that got out of the gold Honda, that's him." (Tr. 36).

In *United States v. Bautista*, 23 F.3d at 729, the Second Circuit upheld an on-the-scene identification procedure similar to the one challenged by Lofton. In *Bautista*, law enforcement agents conducted a raid of a multi-unit apartment building following controlled

purchases of narcotics by a confidential informant. Nine individuals were apprehended and six were identified by an undercover law enforcement agent as potential suspects. All nine people were then handcuffed and taken outside. One at a time, each suspect was brought to a car in which the confidential informant was sitting. The informant was instructed to view each person and to determine whether he or she was one of the people involved in the narcotics operation. Of the nine presented, the informant identified the same six who were selected by the undercover agent. At trial and on appeal, the defendant challenged the identification procedure, claiming that it was unduly suggestive. The Second Circuit rejected the argument, finding, to the contrary, the "presentation of all nine people to the CI was an immediate reasonable effort [ ] to confirm the suspect's identity that is required under the law of this circuit." *Id.* at 730 ("where an officer has 'or should have doubts whether a detained suspect is in fact the person sought, the officer must make immediate reasonable efforts to confirm the suspect's identity'") (quoting *United States v. Valez*, 796 F.2d 24, 27 (2d Cir. 1986), *cert. denied*, 429 U.S. 1067 (1987)).

   Here, as in *Bautista*, Lofton was presented in the show-up procedure within minutes of the reported robbery in an effort to identify or to exclude him as a possible participant in the robbery. Accordingly, for the reasons articulated by the Second Circuit in *Bautista*, I find that the on-scene show-up resulting in Barnes's identification of Lofton did not offend Lofton's constitutional rights.[3]

---

[3] Having found that the identification procedure was not unduly suggestive, it is unnecessary for this Court to evaluate the independent reliability of the identification. *See United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990) (stating that the initial question when determining the admissibility of a pretrial identification is whether the identification procedure was unduly suggestive; if it was not, "the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification").

Finally, insofar as Lofton argues that Barnes's identification should be precluded because the government has failed to demonstrate that it was not improperly influenced by other witnesses present on the porch with Barnes, I reject such contention. Lofton bases his argument entirely on Tucker's report, which notes that "the other witnesses were up on their porch." (Defendant's Ex. A). Tucker testified, however, that he did not see the number of persons on the porch and could not explain why his report references more than one witness. (Tr. 14-20). More importantly, Winter unequivocally and persuasively testified that she accompanied Barnes on his porch immediately preceding and during the show-up procedure and that no other individuals were present. (Tr. 33, 37). Finding Winter's testimony credible, I reject Lofton's alternative argument for seeking suppression of Barnes's identification.

## CONCLUSION

For the foregoing reasons, it is my report and recommendation that defendant's motion to suppress the identification of him on October 15, 2002 **(Docket # 48)** be **DENIED**.

        s/Marian W. Payson  
        MARIAN W. PAYSON  
        United States Magistrate Judge

Dated: Rochester, New York  
      July  1  , 2005.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

      **ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

      **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[4]

      The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

      **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

      The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

      Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

        s/Marian W. Payson  
        MARIAN W. PAYSON  
        United States Magistrate Judge

Dated: Rochester, New York  
      July  1 , 2005.

---

[4] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).